# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Morton Denlow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 04 C 3116 | **DATE** | 6/3/2004 |
| **CASE TITLE** | Brach's Confections, Inc. vs. Howard McDougall, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ■ Status hearing held and continued to 6/9/2004 at 9:30 A.M.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. This Court holds that Plaintiff currently is entitled to receive general information necessary for Brach's to compute its withdrawal liability with respect to the plan under 29 U.S.C. Section 1401(e). The parties shall promptly meet to discuss whether they can agree as to the information the Defendants will produce. By agreement of the parties, the 90-day period under which Brach's must request review is extended pending further order of this Court. No final judgment will be entered until such time as it is determined whether a Phase II hearing is necessary.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | JUN 04 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 6/3/2004 | |
| | | | date mailed notice | |
| DK | courtroom deputy's initials | | DK | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BRACH'S CONFECTIONS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 04 C 3116 |
| | ) | |
| HOWARD McDOUGALL, | ) | Magistrate Judge Morton Denlow |
| as trustee of CENTRAL STATES, | ) | |
| SOUTHEAST AND SOUTHWEST | ) | |
| AREAS PENSION FUND, and | ) | |
| CENTRAL STATES, SOUTHEAST | ) | |
| AND SOUTHWEST AREAS | ) | DOCKETED |
| PENSION FUND, | ) | |
| | ) | JUN 0 4 2004 |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

This case arises under the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), 29 U.S.C. §§ 1381-1461. Plaintiff Brach's Confections, Inc., ("Brach's" or "Plaintiff") claims that Defendant trustee Howard McDougall ("the Plan Sponsor") and Defendant Central States, Southeast and Southwest Areas Pension Fund ("the Plan") (collectively "Defendants") failed to provide information as required under 29 U.S.C. § 1401(e) for the calculation of Brach's withdrawal liability after Brach's withdrew from the Plan. Defendants contend that they are not required to supply any information to Brach's because § 1401(e) does not apply when the employer already has withdrawn from the Plan.

This case comes before the Court by means of a trial on the papers in which the parties have submitted briefs and supporting exhibits which constitute the record in this case. *See* Morton Denlow, *Trial on the Papers: An Alternative to Cross-Motions for Summary Judgment*, Fed. Lawyer, Aug. 1999, at 30; *see also Hess v. Hartford Life & Accident Ins. Co.*, 274 F.3d 456 (7th Cir. 2001) (viewing as a bench trial to which Federal Rule of Civil Procedure 52(a) review applied, the procedure whereby a district court entered its judgment after receiving a stipulation of the facts that made up the record); *May v. Evansville-Vanderburgh Sch. Corp.*, 787 F.2d 1105, 1115-16 (7th Cir. 1986) (determining the parties' cross-motions for summary judgment before a district judge to have been a request for a trial on the papers where the parties waived their right to trial and did not raise the issue of genuine material facts on appeal); *Acuff-Rose Music Inc. v. Jostens, Inc.*, 155 F.3d 140, 142 (2d Cir. 1998) (adopting the position that a district court can decide a case by summary bench trial pursuant to Federal Rule of Civil Procedure 52(a) where the parties clearly have waived their right to a full trial). The parties have agreed to proceed in this manner and to waive their right to oral testimony on the issues herein presented. Oral argument was held on May 27, 2004.

The following constitute the Court's findings of fact and conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure. To the extent certain findings may be deemed to be conclusions of law, they shall also be considered conclusions of law. Similarly, to the extent matters contained in the conclusions of law may be deemed findings of fact, they shall be considered findings of fact.

2

## I. FINDINGS OF FACT

### A. THE PARTIES

1. Plaintiff Brach's Confections, Inc., is a Delaware corporation with its principal place of business located in Dallas, Texas, and is a wholly owned subsidiary of Brach's Confections Holding, Inc. Compl. ¶ 2. Prior to December 2003, Brach's had operated a manufacturing and distribution facility in Chicago, Illinois, and had participated in the Plan. *Id.*

2. The defendant trustees are the "Plan Sponsor," as that phrase is defined under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1002(16)(B)(iii), and have their principal place of business in Rosemont, Illinois. Compl. ¶ 3. The Plan Sponsor manages the Plan, a multiemployer pension plan within the meaning of the MPPAA. *Id.* ¶ 1.

### B. BRACH'S WITHDRAWAL FROM THE PLAN AND ITS WITHDRAWAL ASSESSEMENT

3. In December 2003, Brach's ceased its participation in the Plan. *Id.* ¶ 6.

4. This triggered a complete withdrawal from the Plan under 29 U.S.C. § 1383. Def. Memo. at 4.

5. As required by 29 U.S.C. § 1399(b), the Plan Sponsor served Brach's with a withdrawal assessment on March 11, 2004, providing notice that Brach's withdrawal liability was $31,729,193.13. Compl. ¶ 7; Pl. Memo. Ex. A. The Plan Sponsor calculated the withdrawal liability under a modified presumptive method. Compl. ¶ 8. The withdrawal assessment submitted to Brach's included a three-page summary computation of the

3

withdrawal liability incurred by Brach's. Pl. Memo. Ex. A. The withdrawal assessment letter also included a copy of the Plan's "Rules and Regulations Pertaining to Employer Withdrawal Liability," which allow ninety days for Brach's to request a review of the liability assessment, mirroring the ninety-day period allowed by the applicable federal statute, 29 U.S.C. § 1399(b). *Id.*

6. The modified presumptive method used to calculate Brach's withdrawal liability relies on a number of complex actuarial assumptions to determine the values of the Plan's pre- and post-1980 unfunded vested benefits. Compl. ¶ 9. The method requires additional assumptions not only to determine the value of the Plan's unfunded vested benefits at the end of the plan year preceding the plan year in which Brach's withdrew but also to determine the amount of unfunded vested benefits that are expected to be collected from employers that withdrew in previous plan years. *Id.* ¶¶ 10-11. A series of calculations utilizing these assumptions determines an employer's withdrawal liability. *Id.* ¶¶ 10-12.

7. The liability assessment letter submitted to Brach's did not include the detailed actuarial assumptions that the Plan Sponsor used to calculate Brach's withdrawal liability. Pl. Memo. Ex. A.

## C. BRACH'S REQUEST FOR INFORMATION FROM THE PLAN

8. Brach's claims that it could not determine the accuracy and reasonableness of the Plan Sponsor's assessment of withdrawal liability under the Plan. Compl. ¶ 14.

4

9. Accordingly, on March 12, 2004, Brach's sent to Defendants a request for additional information that Brach's deemed necessary to "verify its withdrawal liability assessed" by the Plan Sponsor. Pl. Memo. Ex. B. Jonathan B. Waite is an actuary and a consultant for Aon Consulting whom Brach's has retained to review the Plan Sponsor's assessment of withdrawal liability under the Plan. *Id.* at Ex. D. Mr. Waite avers in his declaration that he requires the additional information first requested in Brach's March 12 letter in order to "analyze the withdrawal liability assessed to Brach's by the [Plan] and to verify that the determination of liability is correct." *Id.*

10. On April 9, 2004, the Plan Sponsor responded to Brach's request and supplied ten booklets. Def. Memo. Ex. D. The booklets contained information from the previous ten years, including excerpts from actuarial reports and excerpts from the Plan Sponsor's Form 5500 (filed annually with the Department of Labor and containing actuarial and financial information). Def. Memo. at 5 & Ex. D. The Plan Sponsor supplied the information in the booklets despite stating in the responding letter a belief that Brach's was not entitled to the information because Brach's already had withdrawn from the Plan but had not yet entered arbitration. Def. Memo. Ex. D. The Plan Sponsor did not supply all the information Brach's had requested and did not extend the ninety-day review deadline. Pl. Memo. at 5.

11. On April 23, 2004, Brach's replied to Defendants' letter of April 9 to request that Defendants supply the additional information requested in their earlier letter of March 12, 2004, and requested an extension of the ninety-day request for review deadline. Def. Memo. Ex. C.

5

## D. THE LITIGATION

12. On April 30, 2004, Brach's filed this lawsuit to obtain all of the information it requested in its letter of March 12, 2004.

13. On May 3, 2004, Brach's filed a motion for a preliminary injunction before District Judge Ronald A. Guzman. The motion for preliminary injunction was referred to this Court for resolution.

14. The parties have consented to this Court's jurisdiction pursuant to 28 U.S.C. § 636(c)(1). The parties also agreed to dispense with the motion for preliminary injunction and to proceed directly to a resolution of the merits of the case by means of a trial on the papers.

15. This proceeding will be conducted in two phases. First, the court will determine whether Brach's is entitled to any documents under 29 U.S.C. § 1401(e). In the event the Court answers this question in the affirmative, the case will proceed to a second phase to determine what information Defendants are required to produce under 29 U.S.C. § 1401(e). In the event the Court determines that no documents need to be produced, the case will terminate at Phase I. This decision involves only the Court's Phase I determination.

## II. ISSUE PRESENTED

16. Whether Brach's is entitled to receive information from Defendants under 29 U.S.C. § 1401(e), where Brach's has withdrawn from the Plan, but has not yet requested review by Defendants under 29 U.S.C. § 1399(b)(2)(A), or arbitration under 29 U.S.C. § 1401(a).

ANSWER: Yes.

### III. JURISDICTION AND VENUE

17. The parties have consented to this Court's jurisdiction pursuant to 28 U.S.C. § 636(c)(1). This Court has federal jurisdiction over the case pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1451(c) because the litigation arises under ERISA. Venue is proper under 29 U.S.C. § 1451(d) because the Plan is administered in this district.

### IV. CONCLUSIONS OF LAW

#### A. ERISA BACKGROUND

18. Congress enacted the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.*, to help assure that employees would receive the pensions that their employers had promised them. *Milwaukee Brewery Workers' Pension Plan v. Jos. Schlitz Brewing Co.*, 513 U.S. 414, 416 (1995). To accomplish its goal, ERISA required employers to make sufficient contributions to meet future liabilities and, if a plan became insolvent, ERISA also required a fair share contribution from any employer that had withdrawn from the plan in the previous five years. *Id.*

19. The Multiemployer Pension Plan Amendments Act of 1980, 29 U.S.C. §§ 1381-1461, amends ERISA by imposing a withdrawal liability on any employer who withdraws from an underfunded pension plan. *Id.* at 417. Thus, an employer that withdraws from an underfunded plan must pay into the plan according to that employer's liability prior to withdrawal, regardless whether the plan later becomes insolvent. *Id.* The MPPAA eliminates the incentive for an employer to withdraw from an underfunded plan by foreclosing the

possibility that the employer might escape responsibility for an underfunded pension plan. *Id.* The withdrawal liability requirement also helps to ensure that the plan will be able to pay pensions despite an employer's withdrawal. *Id.*

**B.     29 U.S.C. § 1399(b)**

20.     29 U.S.C. § 1399(b) governs the process by which an employer receives notice of its withdrawal assessment and requests informal review of the assessment by the plan sponsor. Under § 1399(b)(1), a plan sponsor must supply an employer with an assessment of the amount of liability resulting from that employer's complete or partial withdrawal from the plan. The plan sponsor also must supply a schedule of payments and must demand payment in accordance with the schedule. 29 U.S.C. § 1399(b)(1). The plan sponsor must provide such notification "as soon as practicable after an employer's complete or partial withdrawal" from the plan. *Id.*

21.     29 U.S.C. § 1399(b)(2)(A) lists an employer's rights in questioning the plan sponsor's assessment of liability:

> No later than 90 days after the employer receives the notice described in paragraph (1), the employer-
> (i) may ask the plan sponsor to review any specific matter relating to the determination of the employer's liability and the schedule of payments;
> (ii) may identify any inaccuracy in the determination of the amount of the unfunded vested benefits allocable to the employer, and
> (iii) may furnish any additional relevant information to the plan sponsor.

29 U.S.C. § 1399(b)(2)(A). Section 1399(b)(2)(B) governs the plan sponsor's responses to such informal requests for review and requires the sponsor to notify the employer of its

8

decision, the basis for the decision, and the reason for any change in the amount of the employer's liability or schedule of liability payments. However, § 1399 does not provide a mechanism by which the employer can demand information from the plan sponsor that the employer might use to identify specific matters for review (under § 1399(b)(2)(A)(i)) or to identify inaccuracies (under § 1399(b)(2)(A)(ii)).

C.   **29 U.S.C. § 1401**

22.   29 U.S.C. § 1401 outlines methods of dispute resolution under the MPPAA. Subsections (a) through (d) govern various facets of the required arbitration procedure that an employer may use to contest a plan sponsor's withdrawal liability assessment. Although subsections (a) through (d) specifically address arbitration and alternative collection methods, subsection (e), entitled "Furnishing of information by plan sponsor to employer respecting computation of withdrawal liability of employer; fees," makes no reference to the arbitration process. Section 1401(e) provides:

> If any employer requests in writing that the plan sponsor make available to the employer general information necessary for the employer to compute its withdrawal liability with respect to the plan (other than information which is unique to that employer), the plan sponsor shall furnish the information to the employer without charge. If any employer requests in writing that the plan sponsor make an estimate of such employer's potential withdrawal liability with respect to the plan or to provide information unique to that employer, the plan sponsor may require the employer to pay the reasonable cost of making such estimate or providing such information.

29 U.S.C. § 1401(e). Thus, § 1401(e) provides a mechanism by which an employer can request "general information necessary for the employer to compute its withdrawal liability"

9

as well as a mechanism by which an employer can request an "estimate of . . . potential liability" as computed by the plan sponsor. This case presents the issue of whether Brach's can rely upon the first sentence of § 1401(e) after it has withdrawn from the Plan.

### D. PLAINTIFF IS ENTITLED TO GENERAL INFORMATION UNDER § 1401(e).

23. Brach's seeks to determine whether it should ask the Plan Sponsor "to review any specific matter relating to the determination" of its withdrawal assessment, pursuant to § 1399(b)(2)(A)(i), and whether it can "identify any inaccuracy in the determination of the amount of the unfunded vested benefits allocable to the employer," pursuant to § 1399(b)(2)(A)(ii). Brach's claims to lack information which it deems necessary to make such determinations. Brach's acknowledges that § 1399(b) has no provision under which it can obtain the information it requires, and therefore Brach's relies on § 1401(e) to obtain information from the Defendants about its withdrawal liability assessment.

24. The Defendants contend that § 1401(e) does not apply because Brach's already has withdrawn from the Plan. Defendants claim they have no current obligation to supply Brach's with any information and that Brach's will be entitled to discovery once it files for arbitration under 29 U.S.C. § 1401(a). *See* 29 C.F.R. § 4221.5(a)(2) (providing for prehearing discovery in the arbitration proceeding).

25. Neither the United States Supreme Court nor the Seventh Circuit has addressed the issue presented in this case. Two conflicting lines of authority have developed following the adoption of the MPPAA. Drawing on *Debreceni v. Merchants Terminal Corp.*, 740 F.

10

Supp. 894 (D. Mass. 1989), *aff'd on other grounds*, 889 F.2d 1 (1st Cir. 1989), the court in *Reliable Liquors, Inc. v. Truck Drivers & Helpers, Local Union No. 355, Pension Fund*, 240 F. Supp. 450, 452 (D. Md. 2003), construed § 1401(e) to apply only prior to an employer's withdrawal from a plan. The court held that once an employer withdraws, it is no longer entitled to information under § 1401(e). *Reliable Liquors, Inc.*, 240 F. Supp. at 452. In contrast, the court in *John J. Nissen Baking Co. v. New England Teamsters & Trucking Industry Pension Fund*, 737 F. Supp. 679, 682 (D. Me. 1990), held that § 1401(e) "requires the plan sponsor, if requested to do so, to provide information necessary to the employer to calculate its withdrawal liability before the employer requests review of or identifies inaccuracies in the sponsor's calculation of that liability."

26. In *Debreceni*, arbitration was underway and the plaintiff plan sponsor sought to compel interim payments from the defendant employer. 740 F. Supp. at 900. The court found in part that the plaintiff's failure to supply information was an insufficient reason not to enforce an interim payment schedule. *Id.* It mentioned in dicta, but failed to fully consider, whether the term "employer" under § 1401(e) is restricted to only a non-withdrawing employer. *Id.* at 894.

27. Citing *Debreceni*, the court in *Reliable Liquors* held that the plaintiff employer was not entitled to any information under § 1401(e) because the employer already had withdrawn from the plan. 240 F. Supp. at 452. In *Reliable Liquors*, the plaintiff employer withdrew from a plan, received an assessment of withdrawal liability from the defendant plan sponsor, and requested more information to evaluate the plan sponsor's assessment. *Id.* at 451.

11

The court held that the employer was not entitled to any information after withdrawal and that § 1401(e) was inapplicable. *Id.* at 452.

28. The court in *Reliable Liquors* stated only that the employer "misreads § 1401(e)" and that, "in the context of the full statutory scheme, it is clear" that the first sentence of § 1401(e) applies only before withdrawal. *Id.*

29. On the other hand, in *Nissen Baking*, a case factually similar to *Reliable Liquors*, the court ruled that a plaintiff employer was entitled to "general information." 737 F. Supp. at 680. The employer in that case had withdrawn from the defendant plan and wished to gain more information before requesting informal review under § 1399(b)(2)(A). *Id.* The court relied on the statutory language, the legislative history, and the larger statutory scheme to find that § 1401(e) requires the plan sponsor to supply information "necessary for the employer to calculate its withdrawal liability *before the employer requests review of or identifies inaccuracies in*" the plan sponsor's assessment of liability. *Id.* (emphasis added). This Court finds the *Nissen Baking* decision to be consistent with the statutory scheme created under the MPPAA.

30. First, the *Nissen Baking* court noted that although many of the portions of § 1401 discuss arbitration of withdrawal liability disputes, "the language in subsection (e) in no way limits its effect to arbitration proceedings." *Id.* at 681.

31. Second, the *Nissen Baking* court considered the legislative history of the MPPAA, finding that it "links the provision of information by the plan sponsor to the rights

12

afforded employers in section 1399." *Id.* at 681. The court quotes the following legislative history:

> The bill would require that before the plan sponsor demands payment the plan sponsor must afford the employer a reasonable opportunity (1) to identify errors in the determination of withdrawal liability, (2) to identify errors in the payment schedule, and (3) to furnish to the plan sponsor any additional pertinent information. The plan sponsor also would be required, if requested, to make relevant plan records reasonably available to the employer for review and duplication.
>
> After the plan sponsor demands payment of withdrawal liability, an employer would be permitted to request the plan sponsor to review any item relating to the calculation of the liability and the payment schedule.

*Id.* (quoting H.R. Rep. No. 96-869(I), at 84 (1980), *reprinted in* 1980 U.S.C.C.A.N. 2918, 2952). The court reasoned that § 1401(e) applied because Congress considered an employer's need for information (codified in § 1401(e)) within the context of the employer's right to identify errors and request a review (codified in § 1399(b)(2)(A)). *Id.* Therefore, the court found that Congress intended § 1401(e) to apply when an employer is considering exercising its rights under § 1399(b). *Id.*

32. Finally, the court in *Nissen Baking* considered the larger statutory scheme and the purpose of the informal review process under § 1399(b). *Id.* at 683. The court, ruling that information under § 1401(e) for purposes of informal review was limited to "general information," found that the review process was not meaningless because "it provides an opportunity to clarify and pare down the issues." *Id.* The court reasoned that by allowing the employer to obtain some information, the informal review process could possibly "obviate the

13

need for arbitration." *Id.* On the other hand, the court reasoned that without the information, the employers "cannot effectively exercise their statutory right to request review and therefore either simplify or obviate the need for arbitration." *Id.* Furthermore, the court noted that "if plan sponsors can, with impunity, deny requests for information, thus forcing arbitration, the scheme envisioned by Congress will be undermined." *Id.*

33. Unlike *Reliable Liquors* and *Debreceni*, the *Nissen Baking* court examined the language of the statute and the legislative history as well as the larger statutory scheme in concluding that § 1401(e) allows an employer to receive "general information" after withdrawal. What constitutes "general information" to which Brach's is entitled under § 1401(e) is reserved for a Phase II proceeding in the event the parties cannot resolve this issue. This Court draws upon the reasoning in *Nissen Baking* to hold that Brach's currently is entitled to "general information necessary for an employer to compute its withdrawal liability" under § 1401(e).

34. The language of § 1401(e) does not limit itself to arbitration proceedings, nor does the language require that the employer request information prior to withdrawal. 29 U.S.C. § 1401(e). Section 1401 is entitled "Resolution of Disputes," and although subsections (a) through (d) specifically deal with arbitration, the language of § 1401(e) does not limit its effect to arbitration proceedings. Section 1401(e) makes no mention of any particular time during which an employer must request, or a plan sponsor must provide, general information regarding withdrawal liability. *Id.* § 1401(e). The second sentence of § 1401(e) clearly applies

14

to the pre-withdrawal and pre-arbitration time period. The Court, however, finds no basis to limit the first sentence of § 1401(e) to the pre-withdrawal period.

35. The language of § 1401(e) does not require that an employer request information prior to withdrawal in order to be entitled to general information. The first sentence of § 1401(e) states that if "any employer requests . . . general information necessary for the employer to compute its withdrawal liability," then the plan is required to supply general information. *Id.* § 1401(e). In contrast, the second sentence of § 1401(e) applies only when the employer is seeking "an estimate of such employer's potential withdrawal liability." *Id.* Although the term "potential liability" clearly restricts the application of the second sentence to employers who have not withdrawn from the plan, that term is excluded conspicuously from the first sentence of the section. Furthermore, if the entire section contemplated only potential liability, then liability in the first sentence of the section would be conditioned on being "potential." The first sentence, however, discusses "liability" only and not "potential liability." Therefore the first sentence need not be restricted to cases where liability is potential rather than actual.

36. The legislative history cited and discussed in *Nissen Baking* supports such a reading. As the *Nissen Baking* decision points out, the legislative history of the statute indicates that the plan sponsor should provide information to the employer in order for the employer to identify any errors in the assessment of its withdrawal liability. *Nissen Baking*,

15

737 F. Supp. at 681. Specifically, the MPPAA views the supply of information as critical, stating that, under the statute, "the plan sponsor also would be required, if requested, to make relevant plan records reasonably available." *Id.*

37. As the *Nissen Baking* court explained, the MPPAA must be construed to give meaning to both § 1399(b)(2)(A) and § 1401(e). Restricting § 1401(e) to preclude cases where an employer already has withdrawn but has not requested review is illogical because, without the information that can be requested only under § 1401(e), an employer may be unable to exercise effectively its statutory right to request review under § 1399(b). If an employer cannot gain sufficient information to request an informal review, then the informal review process under § 1399 is rendered meaningless except as a technicality and as a necessary prerequisite to arbitration.

38. The court in *Reliable Liquors* limited an employer's rights under § 1399(b) to the right to request review of any specific matter, the right to identify inaccuracies, and the right to furnish additional information to the plan sponsor under § 1399(b)(2)(A). However, the court did not explain how an employer would gain information to meaningfully exercise these rights without necessary information from the plan sponsor. Thus, if an employer is lacking information, the employer technically can not request review of any "specific matter," nor can it efficiently "identify inaccuracies." A plan sponsor need only refuse to provide information, thus forcing an employer immediately into arbitration instead of conducting any informal review.

16

39. In this case, Brach's has received a $31,729,493.13 withdrawal assessment. This assessment is a serious issue and there is no logical reason why Brach's should not receive the information to which it was entitled on the day before it withdrew, simply because it has exercised its right to withdraw from the Plan.

40. Restricting the first sentence of § 1401(e) to instances where an employer has not withdrawn from the plan also affords the section an overly-narrow read. The "general information" required under § 1401(e) may be useful to an employer in deciding whether to withdraw from the plan. The same information is useful to an employer who already has withdrawn and then must decide whether to request a review of the withdrawal assessment. The Plan Sponsor is not justified in refusing information to which an employer is entitled merely because the employer is no longer considering withdrawal but rather already has withdrawn from a plan.

41. As the *Reliable Liquors* court acknowledges, "at the heart of the MPPAA's regime are provisions for informal, expeditious resolution of withdrawal liability disputes." *Id.* (quoting *I.A.M. Nat'l Pension Fund v. Clinton Engines Corp.*, 825 F.2d 415, 416 (D.C. Cir. 1987)). 29 U.S.C. § 1399 attempts to facilitate informal, expeditious resolution of withdrawal liability by allowing an employer to request an informal review within ninety days. However, if the employer has insufficient information to engage in an informal review, then the employer is forced immediately into arbitration. The interest in facilitating informal, expeditious resolution through the informal review process can be served only by allowing the employer the information necessary to engage in the informal review. Furthermore, there is no additional

burden on Defendants because they are required to provide this "general information" to any employer that requests it to compute its withdrawal liability.

42. Although this Court now holds that Brach's is entitled to general information necessary for it to compute its withdrawal liability under 29 U.S.C. § 1401(e), no finding has been made as to the content of the specific items of information to which Brach's is entitled. The Court will allow the parties a brief period to resolve this issue on their own.

## V. CONCLUSION

For the foregoing reasons, **this Court holds that Brach's currently is entitled to receive general information necessary for it to compute its withdrawal liability with respect to the plan under 29 U.S.C. § 1401(e).** The parties shall promptly meet to discuss whether they can agree as to the information the Defendants will produce. The case is continued to June 9, 2004 at 9:30 a.m. for status. By agreement of the parties, the 90-day period under which Brach's must request review is extended pending further order of this Court. No final judgment will be entered until such time as it is determined whether a Phase II hearing is necessary.

**SO ORDERED THIS 3rd DAY OF JUNE, 2004.**

*[signature: Morton Denlow]*

**MORTON DENLOW**
**UNITED STATES MAGISTRATE JUDGE**

**Delivered in open court to:**

Mark A. Casciari
John M. Vande Wale
SEYFARTH SHAW LLP
55 East Monroe Street, Suite 4200
Chicago, IL 60603

Counsel for Plaintiff

Charles H. Lee
Central States Law Department
9377 W. Higgins Road, 10th Floor
Rosemont, IL 60618-4938

Counsel for Defendants