# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Morton Denlow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 04 C 3116 | **DATE** | 8/13/04 |
| **CASE TITLE** | Brach's Confections v. McDougall, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference [held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Phase II on the trial on the papers is concluded. This Court holds that under 29 U.S.C. section 1401(e) Brach's is not entitled to any additional information from the Defendants except for actuarial assumptions, and the directly underlying methodologies or reasons therefor, used to determine the amount of withdrawal liability deemed collectable.

(11) ☐ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | | | | | | |
|---|---|---|---|---|---|---|
| | No notices required, advised in open court. | | | | | |
| | No notices required. | | | number of notices | | |
| | Notices mailed by judge's staff. | | | AUG 18 2004 | | |
| | Notified counsel by telephone. | | | date docketed | | |
| ✓ | Docketing to mail notices. | | | | | |
| | Mail AO 450 form. | | | docketing deputy initials | | |
| | Copy to judge/magistrate judge. | | | date mailed notice | | |
| mm | courtroom deputy's initials | | | | | |

CLERK, U.S. DISTRICT COURT

2004 AUG 17 PM 1:44

Date/time received in central Clerk's Office    mailing deputy initials

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| BRACH'S CONFECTIONS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | No. 04 C 3116 |
| | ) | |
| v. | ) | Magistrate Judge Morton Denlow |
| | ) | |
| HOWARD McDOUGALL, | ) | |
| as trustee of CENTRAL STATES, | ) | |
| SOUTHEAST AND SOUTHWEST | ) | |
| AREAS PENSION FUND, and | ) | |
| CENTRAL STATES, SOUTHEAST | ) | |
| AND SOUTHWEST AREAS | ) | |
| PENSION FUND, | ) | |
| | ) | |
| Defendants. | ) | |

DOCKETED

AUG 1 8 2004

## MEMORANDUM OPINION AND ORDER

The parties in this case are before this Court on Phase II of a two-phase trial on the papers, involving an issue that has arisen on the meaning of the phrase "general information necessary for the employer to compute its withdrawal liability with respect to the plan" under 29 U.S.C. § 1401(e). This controversy began after Plaintiff Brach's Confections, Inc., ("Brach's" or "Plaintiff") withdrew from the defendant Central States, Southeast and Soutwest Areas Pension Fund ("the Plan"), which is managed by the defendant trustee Howard McDougall (collectively "Defendants"). Prior to exercising its right to review its withdrawal liability assessment, Brach's sought information to which it claimed entitlement under 29 U.S.C. § 1401(e) of the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), 29 U.S.C. §§ 1381-1461. Defendants provided some information to Brach's

but further refused the request on the grounds that Brach's was not entitled to any information under § 1401(e) because it already had withdrawn from the plan. Defendants alternatively asserted that if § 1401(e) indeed applied, then the information they already provided to Brach's is sufficient to satisfy their obligation under § 1401(e).

The parties agreed to resolve this litigation with a two-phase trial on the papers. In Phase I, *Brach's Confections, Inc. v. McDougall*, No. 04 C 3116, 2004 WL 1244036 (N.D. Ill. June 3, 2004), this Court considered only whether Brach's, an employer that already had withdrawn from a plan, was entitled to *any* information under 29 U.S.C. § 1401(e). This Court held that § 1401(e) did apply, entitling Brach's to "general information necessary for an employer to compute its withdrawal liability."

What constitutes "general information necessary for an employer to compute its withdrawal liability" was reserved for Phase II. This Court urged the parties to reach an agreement about the scope and the type of documents necessary to be produced under the statute. Having failed to agree about what constitutes "general information necessary to compute withdrawal liability," the parties now seek a decision from this Court, and have submitted briefs and supporting exhibits, which constitute the record in this second phase of the trial on the papers.

The following constitute the Court's findings of fact and conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure. To the extent certain findings of fact may be deemed to be conclusions of law, they also shall be considered conclusions of law.

Similarly, to the extent matters contained in the conclusions of law may be deemed findings of fact, they also shall be considered findings of fact.

## I. FINDINGS OF FACT

The underlying findings of fact in this case have been recited in great detail in this Court's opinion in *Brach's Confections, Inc.*, 2004 WL 1244036. Therefore, what follows are the facts materially pertinent to the issue now before this Court.

### A. INFORMATION SUPPLIED BY THE PLAN

1. In addition to the withdrawal liability assessment that Defendants supplied to Brach's pursuant to 29 U.S.C. § 1399(b), Defendants have supplied Brach's with actuarial assumptions used by, and financial information concerning, the Plan. The material provides information relevant to plan years 1993 through 2002, the plan years upon which Brach's withdrawal liability assessment depends. Specifically, Defendants have supplied booklets that include the following data for each plan year: the Plan's Annual Return/Report of Employee Benefit Plan (Form 5500), along with excerpts from the Plan's actuarial report; a calculation of the Plan's net change value for the year end; and the post-1979 pool denominator. Harry E. Keil ("Keil") Aff., Exs. 2-11. In addition, the Defendants have supplied to Plaintiff a copy of the Trust Agreement for the Plan, the Plan's rules and regulations pertaining to employer withdrawal liability, and mathematical formulas for the Plan's unfunded vested benefits and withdrawal liability. Keil Aff., Exs. 12-15.

2.     The information from the actuarial reports provided for each year includes information about the Plan's assets and liabilities. Each report includes a worksheet that accounts for the change in unfunded vested benefit liability from the prior year. Keil Aff., Ex. 11 pt. 2, at 2. The report also includes an analysis of the change in unfunded vested benefit liability, *id.* at 16, and an analysis of the market value of plan assets, *id.* at 21, as well as a written explanation of the change in net liability from the prior year, *id.* at 9. Appendix A of each actuarial report provides information concerning actuarial procedures and assumptions. Actuarial assumptions are provided relevant to participant retirement, disability, mortality, and marriage rates, along with basic information concerning procedures for missing or incomplete items within the data. *See, e.g.*, Keil Aff., Ex. 2 pt. 4, App. A, at 26-34.

3.     The calculations of the Plan's net change value and formula denominator are supplied, along with a brief explanation of how the calculations were made. To calculate the net change value, the Plan subtracted the total withdrawal liability it deemed collectable from the total unfunded vested benefits listed in the actuarial report. Keil Aff., Ex. 11 pt. 3. To calculate the withdrawal liability denominator, the Plan listed and added the value of all employer contributions listed in each Form 5500 for each of the previous ten plan years. Next, it subtracted the total contributions made by employers who were coded as having completely withdrawn prior to the end of the current plan year. Keil Aff., Ex. 11 pt. 4.

4.    The formula for the computation of withdrawal liability selected by Defendants is set out in 29 U.S.C. § 1391(c)(2)(C).  As permitted by statute, the Plan has chosen to calculate withdrawal liability using the Modified Presumptive (Basic) Method.  Keil Aff. ¶ 22.  The statutory equation as presented by the Plan is as follows:

(The plan's unfunded vested benefits as of the end of the plan year preceding the plan year of withdrawal {MINUS} (the value as of such date of all outstanding claims for withdrawal liability which can reasonably be expected to be collected, with respect to employers withdrawing before such plan year {PLUS} that portion of the amount determined under § 1391(c)(2)(B)(i) which is allocable to employers who have an obligation to contribute under the plan in the plan year preceding the plan year in which the employer withdraws and who also had an obligation to contribute under the plan for the first plan year ending after September 25, 1980.))

X

(The total amount required to be contributed under the plan by the employer for the last 5 plan years ending before the date on which the employer withdraws.)

_____

(The total amount contributed under the plan by all employers for the last 5 plan years ending before the date on which the employer withdraws, increased by the amount of any employer contributions owed with respect to earlier periods which were collected in those plan years, and decreased by any amount contributed by an employer who withdrew from the plan under this part during those plan years.)

Keil Aff., Ex. 15; *see also* 29 U.S.C. § 1391(c)(2)(C).  Although the statutory equation mandates the use of five plan years, the Plan's calculation actually uses ten plan years, a modification permitted by 29 U.S.C. § 1391(c)(5)(A).  Section 1391(c)(2)(B)(i), to which the multiplicand refers, computes the following variable: "the plan's unfunded vested benefits as of the end of the last plan year ending before September 26, 1980, reduced as if those obligations were being fully amortized in level annual installments over 15 years beginning with the first plan year ending on or after such date."  29 U.S.C. § 1391(c)(2)(B)(i).

5.    Using the modified statutory equation, the Plan's computation of Brach's withdrawal liability is as follows:

($9,793,000,000 - ($78,721,343 + $0)) x ($28,333,299/$8,674,502,320) = $31,729,493.13.

Keil Aff., Ex. 15.

5

## B.    INFORMATION REQUESTED BY BRACH'S

6.     Brach's continues to assert that Defendants have refused to produce ten items of information it requested from the Plan.  Jonathan B. Waite ("Waite") Decl. ¶ 4; Waite Supp. Decl. ¶ 2.  These requests are contained in subparagraphs "a" through "k" of paragraph 2 of the Waite declaration.  These requests can be divided into five categories.  In the first category, Brach's requests information underlying the Plan's actuarial assumptions in requests "a" through "d."  Waite Decl. ¶ 2.a–d.  For example, request "a" states:

> a.     Copies of the results of the experience studies and the studies themselves (including all data analyzed) upon which the changes effective 12/31/02 in the retirement and termination assumptions were based.  Additionally, provide minutes of the Board of Trustees meeting addressing the changes in the assumptions.  Data provided should include participant identifier such as Social Security Number, date of birth, date of hire, Benefit Class, service, contributory service, self-contributory service, contribution rates, date of termination or retirement, and any other information used to complete the study;

*Id.* ¶ 2.a.  Brach's also requests the same information relevant to the mortality and disability assumptions (request "b") and to the marriage and surviving spouse assumptions (request "c").  *Id.* ¶ 2.b–c.  Request "d" also pertains to the information underlying the Plan's actuarial assumptions:

> d.     A summary of missing participant data and the methods used to estimate the data missing for purposes of computing the 12/31/02 vested benefits liability.  Include information regarding the number of individuals missing each type of data and the present value of vested benefits attributable to these people.  For the December 31, 2002 vested benefit valuation, provide data for all participants including participant identifier such as Social Security Number, date of birth, date of hire, Benefit Class, service, contributory service, self-contributory service,

contribution rates, date of termination or retirement, benefit option elected, date of death, date of disability, date of birth of spouse or surviving spouse, benefit amount (actual for terminated and retired participants and Accrued Benefit for active participants), and any other information used to complete this analysis. For each participant missing any data item, indicate the data item missing and the assumed data used in its place;

*Id.* ¶ 2.d.

7.     In the second category, Brach's requests information in requests "e" and "g" about funds that employers have not paid and withdrawal liability that is not collectable, requesting:

e.     A description of any periods of time granted by or negotiated with the Fund for any employers for which contributions were not made for participants. Indicate the employer, the length of the period of time for which contributions were not made, and the amount of contribution that would have been collected by the Fund if contributions had been made during each of these periods (based on actual contribution base units and the contribution rates in effect at the time);

*Id.* ¶ 2.e. Additionally:

g.     Identify the amount of withdrawal liability deemed uncollectible for purposes of computing the net change value as of 12/31/02. Also, show the amount by withdrawn employer, the year of withdrawal of that employer, the year the amount was deemed uncollectible, and describe why it has been deemed uncollectible;

*Id.* ¶ 2.g.

8.     In the third category, Brach's requests "the amount of contributions attributable to employers that have withdrawn during the period 1993 through and including 2002," along

with the "name of each withdrawn employer and the amount of its contributions by year" (request "f"). *Id.* ¶ 2.f.

9. In the fourth category, Brach's requests "an explanation for the billing charge entries in the interim payment schedule, and all [Plan] policies relating to the billing charges" (request "i"). *Id.* ¶ 2.i. In the fifth category, Brach's requests information regarding Plan procedures; requests "j" and "k" are for the Plan to "[p]rovide or describe all [Plan] procedures that address the process by which the [Plan] audits data received from contributing employers," including the frequency and the scope of the audits, *id.* ¶ 2.j, and to "[p]rovide or describe all fund procedures that address the process by which the [Plan] or an actuary for the [Plan] edits or reconciles participant data over time," *id.* ¶ 2.k.

## C. COMPETING AFFIDAVITS

10. Jonathan B. Waite, an actuary that Brach's consulted for review of its withdrawal liability, stated in his initial declaration that the requested information is necessary "to analyze the withdrawal liability assessed to Brach's by the [Plan] and to verify that the determination of the liability is correct." *Id.* ¶ 5. In his supplemental declaration dated June 22, 2004, Mr. Waite stated: "Without the identified information, it is not possible for me to compute Brach's withdrawal liability." Waite Supp. Decl. ¶ 3. With respect to the original declaration, Mr. Waite stated: "[W]hen I stated that the requested information was

needed to 'verify,' to 'determine,' to 'understand,' or to 'analyze' the withdrawal liability demanded by the [Plan], I was referring to my expert opinion that will be based on my computation of Brach's withdrawal liability." *Id.* ¶ 4.

11. In support of Defendants' position that they supplied all the general information that Brach's needs to compute its withdrawal liability, Defendants submitted the affidavit of Harry E. Keil, the Department Manager of Collections, who is employed by the Plan. Keil's affidavit details the calculation used to determine a withdrawal liability assessment and indicates that all of the variables relevant to the calculation can be found either in the original notice and demand sent to Brach's or in the Withdrawal Booklets that Brach's already has received. *See* Keil Aff. ¶¶ 24-31.

## II. ISSUE PRESENTED

12. Whether the term "general information necessary to compute" an employer's withdrawal liability under 29 U.S.C. § 1401(e) requires Defendants to produce any of the additional information requested by Brach's.

ANSWER: No, except to the extent that any actuarial assumptions were used to compute the value of the total outstanding claims for withdrawal liability that the Plan reasonably expects to collect.

## III. JURISDICTION

13. The parties consented to this Court's jurisdiction pursuant to 28 U.S.C. § 636(c)(1). This Court has federal jurisdiction over the case pursuant to 28 U.S.C. § 1331

and 29 U.S.C. § 1451(c) because the litigation arises under ERISA. Venue is proper under 29 U.S.C. § 1451(d) because the Plan is administered in this district.

## IV. CONCLUSIONS OF LAW

14.    29 U.S.C. § 1401(e), entitled "Furnishing of information by plan sponsor to employer respecting computation of withdrawal liability of employer," provides:

> If any employer requests in writing that the plan sponsor make available to the employer *general information necessary for the employer to compute its withdrawal liability* with respect to the plan (other than information which is unique to that employer), the plan sponsor shall furnish the information to the employer without charge. If any employer requests in writing that the plan sponsor make an estimate of such employer's potential withdrawal liability with respect to the plan or to provide information unique to that employer, the plan sponsor may require the employer to pay the reasonable cost of making such estimate or providing such information.

29 U.S.C. § 1401(e) (emphasis added). Having previously determined that Brach's is entitled to receive information under § 1401(e), this Court now must determine the nature and specificity of the information Defendants are required to produce.

15.    The parties dispute both the meaning of "general information" and the nature of the information "necessary to compute" Brach's withdrawal liability. This Court will determine the meaning of each of these two phrases, then apply its determinations to the ten requests for information that Brach's has submitted and with which the Plan has refused to comply.

## A. "GENERAL INFORMATION"

16.     The parties dispute the meaning of the term "general information." Under

§ 1401(e), "general information" specifically excludes information "which is unique to that

employer." Consequently, Brach's claims that the term "general information" includes all

relevant information, even very detailed information, that relates to all employers generally.

On the other hand, the Plan contends that "general information" is basic information about

the plan, and only basic information not specific to a withdrawing employer must be

supplied. This Court holds that "general information" in this context is limited to basic, not

specific or detailed, information relevant to a withdrawal liability assessment.

17.     In determining the nature of information available to a withdrawn employer

under § 1401(e), the court in *John J. Nissen Baking Co., Inc. v. New England Teamsters &*

*Trucking Industry Pension Fund*, 737 F. Supp. 679, 682 (D. Me. 1990), ruled that "general

information" was limited to basic information necessary for an employer to compute

withdrawal liability. Specifically, the court in *Nissen Baking* found that the plaintiff

employer's request for information was "far too broad," citing the employer's request for

meeting minutes and letters and reports describing actuarial assumptions. *Id.* That court

viewed the employer's request as a "full-blown discovery request," more appropriate for an

arbitration proceeding than for an initial review under § 1399 and further noted that

"Congress did not intend for the section 1399 review to be an elaborate challenge" to the

withdrawal assessment. *Id.* at 683; *see also Debreceni v. Merchant's Terminal Corp.*, 740

F. Supp. 894, 900 (D. Mass. 1989) (contrasting, in dicta, general information under § 1401(e) with detailed information available through prehearing discovery).

18.    Construing "general information" as basic information about the plan is consistent with the dispute resolution scheme set out in the MPPAA. The MPPAA sets a time limit for the review process. Within the first ninety days after an employer receives an assessment, the employer's initiation of review must occur. The employer may request information under § 1401(e), *Brach's Confections, Inc.*, 2004 WL 1244036, a plan must provide the information, and the employer must process the information and submit a request for review under § 1399(b)(2)(A). The plan sponsor is required to respond after a "reasonable review of any matter raised." 29 U.S.C. § 1399(b)(2)(B). According to the court in *Nissen Baking*,  the review process under § 1399 is useful because "it provides an opportunity to clarify and pare down the issues" in arbitration. 737 F. Supp. at 863. The employer then has sixty days from the plan sponsor's response to initiate arbitration. 29 U.S.C. § 1401(a)(1). In order to initiate and to complete the review process within the time frame established by the MPPAA, information available under § 1401(e) must be limited to basic information that can be exchanged between a plan and an employer within a matter of months.

19.    Furthermore, the formal arbitration process laid out by the MPPAA provides an employer with ample opportunity for full discovery. An employer who initiates arbitration is entitled to much more than just "general information"; once the arbitration process is

initiated, any information that might lead to the discovery of relevant evidence is discoverable. *See Debreceni*, 740 F. Supp. at 900 (noting that the federal regulation "provides for full prehearing discovery, including depositions, interrogatories, and requests for production of documents"); *see also* 29 C.F.R. § 4221.5. Accordingly, § 1401 does not establish a time frame by which arbitration must be completed. Therefore, the studies behind the Plan's assumptions and changes in assumptions, for example, may be relevant in the arbitration, but is beyond what is required for the Plan to produce at this stage.

**B.     INFORMATION "NECESSARY TO COMPUTE" BRACH'S WITHDRAWAL LIABILITY**

20.     The parties also dispute exactly what information is "necessary to compute" Brach's withdrawal liability. Brach's claims that all information, numerical or otherwise, relevant to the Plan's computation of withdrawal liability is necessary for Brach's to compute its withdrawal liability. Brach's requests detailed information that underlies the Plan's calculations. On the other hand, the Plan contends that the set of information necessary to compute withdrawal liability contains only the numerical values that the Plan assigned to the variables used in the withdrawal liability formula set out in § 1391(c)(2)(C). This Court holds that information necessary to compute withdrawal liability includes both the numerical values of the variables used under 29 U.S.C. § 1391(c)(2)(C) and the basic actuarial assumptions used in the calculation.

21.     The most basic set of information necessary to compute withdrawal liability contains only the numerical values of these variables. The parties agree that the Plan already

has supplied the numerical values of these variables, which are inserted into the statutory equation to compute an employer's withdrawal liability.

22. This Court acknowledges, however, that if the Plan were required to supply only the values assigned to these variables, then Brach's would be able to do nothing more than check the math of the computation. Under these circumstances, the review process indeed would be rendered ineffective and meaningless because, although Brach's would be able to calculate its withdrawal liability in the most technical and narrow way, the numbers in the formula would be unsupported, leaving Brach's unable to contest the values that go into each variable. Therefore, this Court holds that general information "necessary to compute" withdrawal liability includes basic numerical support for the values that the Plan has assigned to each variable. Specifically, the total value of the Plan's unfunded vested benefits, as identified at 29 U.S.C. § 1391(c)(2)(C)(i)(I), is the value upon which the entire assessment rests in this case, and therefore the computation of this value (over \$9.7 billion in this case) is necessary to the computation of withdrawal liability.

23. To compute a plan's unfunded vested benefits, the plan uses actuarial assumptions and information about the plan's assets. Reasonably, both the basic actuarial assumptions and the plan's basic asset information are necessary to compute withdrawal liability because these numbers are needed to calculate the plan's unfunded vested benefits. On the other hand, underlying information such as the studies and meeting minutes that led

to the actuarial assumptions used by the plan is not general information necessary to compute withdrawal liability.

## C. BRACH'S OUTSTANDING INFORMATION REQUESTS

24.     Brach's has ten outstanding requests for information. These requests will be evaluated in light of what this Court has determined constitutes general information necessary for an employer to compute its withdrawal liability. Notably, the Plan already has supplied Brach's with a substantial amount of information, including the Plan's annual Form 5500 and annual booklets that include financial and actuarial information. For the reasons set forth below, this Court finds that the information already supplied by the Plan is sufficient to meet the Plan's obligation to supply information under § 1401(e), with the exception of any assumptions or actuarial information, and the directly underlying methodologies or reasons therefor, used to determine the total withdrawal liability that the Plan deems collectable.

25.     The information Brach's seeks falls into five categories. First, Brach's seeks information upon which the Plan's actuarial assumptions are based (requests "a" through "d"). Second, Brach's seeks information about funds that employers have not paid and about withdrawal liability that is not collectable (requests "e" and "g"). Third, Brach's seeks more detail about employers that already have withdrawn from the Plan (request "f"). Fourth, Brach's seeks information regarding billing charge entries (request "i"). Finally, Brach's

seeks information regarding the Plan's procedures (requests "j" and "k"). Only requests "e" and "g" shall be granted in part for the reasons stated below.

**Requests "a" through "d": Information supporting the Plan's actuarial assumptions**

26.     The actuarial assumptions themselves are included in the information that the Plan already has supplied, including assumptions about retirement, mortality, disability, marriage, and missing participants. For example, the 2002 booklet, applicable to employers withdrawing during 2003, states: "Probability of Marriage . . . 80% of active participants are assumed to be married. 75% of deceased vested inactive participants who participated in the plan after 1975 are assumed to have a surviving spouse potentially eligible for deferred survivor benefits." Keil Aff., Ex. 11 pt. 2, at 29. The other assumptions similarly are provided in the booklets. *See, e.g.*, Keil Aff., Ex. 2 pt. 2. However, the studies that support these conclusions are not basic, general information, nor are the studies themselves necessary to compute Brach's withdrawal liability at this point in the dispute resolution process.

27.     Furthermore, Brach's expressly stated in oral argument that, because changes "looked suspicious," it requires information supporting the assumptions in order to justify the changes the Plan made. As such, Brach's seeks this information to challenge or to verify the changes, not to calculate withdrawal liability. For the calculation at this stage, Brach's needs only the assumptions themselves. Therefore, this Court holds that Brach's is not entitled to information under requests "a" through "d" because the information requested is neither general nor necessary to compute its withdrawal liability. Brach's already has the

16

actuarial assumptions. Brach's actuary should be able to draw some initial conclusions concerning the reasonableness of the Plan's assumptions, based on his professional opinion and experience.

### Requests "e" and "g": Information about payments not made by other employers and uncollectable withdrawal liability

28.     Second, Brach's seeks information regarding contributions that participants did not make because of negotiations with the Plan and information about withdrawal liability that the Plan has deemed uncollectable. However, the Plan's unfunded vested benefits do not depend on any value *not* contributed by employers; rather, the Plan's assets are determined in part by contributions employers *did* make. The Plan already has provided information about contributions paid: the total value of the annual paid contribution can be found on Form 5500 and in the 2002 booklet. Keil Aff., Ex. 11, at 4. Contributions that have not been made do not appear to be a variable in the withdrawal liability calculation. Brach's actuary has stated that this information is relevant to determine if some of the Plan's liability is attributable to other causes – an inquiry which may form a basis for challenging the withdrawal liability assessment but which is not relevant to the withdrawal liability formula. Because the information is not necessary to compute withdrawal liability, this Court holds that Brach's is not entitled to the information requested concerning payments not made and withdrawal liability not collected.

29.     However, one of the variables used in the computation for withdrawal liability is "the value as of such date of all outstanding claims for withdrawal liability which

reasonably can be expected to be collected." 29 U.S.C. § 1391(c)(2)(C)(i)(II). Brach's contends that actuarial assumptions were used in the calculation of this variable. To the extent that the Plan has relied on any actuarial assumptions to calculate the withdrawal liability that it deems collectable, Brach's is entitled to the assumptions and the direct underlying methodologies or reasons therefor because they are general and necessary to compute withdrawal liability. For example, the Plan should so state whether its historical experience for the last several years is its basis for the value of all outstanding claims for withdrawal liability that reasonably can be expected to be collected. With such information, the actuaries for Brach's can determine whether reliance upon that data is reasonable and appropriate.

### Request "f": Details about employers that previously have withdrawn from the Plan

30.     Third, Brach's seeks information about contributions from employers that previously withdrew from the Plan. One of the variables in the withdrawal liability equation in this case is the total amount contributed by all employers for the last ten years, increased by the amount of employer contributions owed for earlier years and collected within the period and decreased by contributions made by employers who withdrew from the plan during the ten-year period. Thus, the total value of contributions made by employers who subsequently withdrew from the plan is necessary to compute withdrawal liability. However, this value already has been supplied to Brach's. Keil Aff., Ex. 11 pt. 4. Although Brach's seeks a breakdown of this value, including the name of each employer and the amount of

18

each employer's contribution per year, such information is not in the nature of a general inquiry. Rather, Brach's seeks specific supporting information that is more detailed than the information to be supplied in a preliminary inquiry. Therefore, this Court finds that, at this stage, Brach's is not entitled to detailed information about other employers that have withdrawn from the Plan.

### Request "i": Information regarding billing charge entries

31.    Fourth, Brach's seeks information regarding billing charge entries found in the interim payment schedule. The interim payment schedule is required under § 1399(b)(1)(a) and was submitted along with the withdrawal liability notice and demand for payment that the Plan originally sent to Brach's. The payment schedule sets out a proposed schedule by which Brach's can pay its withdrawal liability assessment over time. The payment schedule permissibly includes ancillary charges that are not part of the withdrawal liability assessment but rather accrue only as the assessment is paid over time. *See* 29 U.S.C. § 1399(c)(6). These charges become due only if Brach's chooses to pay its withdrawal liability assessment over time. Therefore, information about the billing charge entry is not necessary to compute Brach's withdrawal liability but rather to compute the cost to Brach's of paying over time. Therefore, this Court holds that Brach's is not entitled to information in response to its request concerning billing charge inquiries.

**Requests "j" and "k": Information regarding the Plan's procedures**

32.     Finally, Brach's seeks information regarding the Plan's procedures for auditing and reconciling data.   The Plan's procedures are not necessary to compute withdrawal liability; the procedures do not supply basic numerical support and actuarial assumptions for the variables that combine to calculate the withdrawal liability assessment.   Therefore, this Court holds that Brach's is not entitled to information in response to its requests regarding the Plan's procedures.

## V.  CONCLUSION

For the foregoing reasons, **this Court holds that under 29 U.S.C. § 1401(e) Brach's is not entitled to any additional information from the Defendants except for actuarial assumptions, and the directly underlying methodologies or reasons therefor, used to determine the amount of withdrawal liability deemed collectable.**

**SO ORDERED THIS 13th DAY OF AUGUST, 2004.**

**MORTON DENLOW**
**UNITED STATES MAGISTRATE JUDGE**

**Copies mailed to:**

Mark A. Casciari
John M. Vande Wale
SEYFARTH SHAW LLP
55 East Monroe Street, Suite 4200
Chicago, IL 60603

Counsel for Plaintiff

Charles H. Lee
Central States Law Department
9377 W. Higgins Road, 10th Floor
Rosemont, IL 60618-4938

Counsel for Defendants